# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY, | ) ) ) | CASE NO. 8:10CV38 |
| Plaintiff, | ) ) | |
| v. | ) ) | MEMORANDUM AND ORDER |
| PROGRESS RAIL SERVICES CORPORATION, | ) ) ) ) | |
| Defendant. | ) | |

This matter is before the Court on the Defendant's Motion to Dismiss (Filing No. 45). For the reasons discussed below, the Motion will be denied.

## FACTS

For purposes of the pending Motion, the Court accepts as true all the factual allegations in the Plaintiff's Amended Complaint (Filing No. 42), although the Court need not accept the Plaintiff's conclusions of law.

Plaintiff Union Pacific Railroad Company ("Union Pacific") is a Delaware corporation with its principal place of business in Omaha, Nebraska. Defendant Progress Rail Services Corporation ("Progress Rail") is an Alabama corporation with its principal place of business in Alabama. The amount in controversy exceeds $75,000, and Union Pacific has invoked the Court's diversity jurisdiction.

On July 14, 2007, Union Pacific train CBMRV-12 (the "First Train") derailed near DeWitt, Iowa. The First Train was composed of 135 loaded coal cars, including railcar CWEX 1538 (the "First Railcar"), owned by a third party. Union Pacific's investigation revealed that the First Train derailed due to the failure of an axle on the First Railcar. Progress Rail mounted a roller bearing on the axle in April 2006 without properly inspecting

the axle for corrosion pits, removing the corrosion pits, checking the axle for cracks, and treating the axle in compliance with industry standards, thereby allowing the axle to fracture.

On January 14, 2010, Union Pacific train 3CEBJK-14 (the "Second Train") derailed near Martin Bay, Nebraska. The Second Train was composed of 123 loaded cars, including railcar JECX 1409 (the "Second Railcar"), owned by a third party. Union Pacific's investigation revealed that the Second Train derailed due to the failure of an axle on the Second Railcar. Progress Rail mounted a roller bearing on the axle approximately 11 months before the derailment, and failed to inspect the axle for corrosion pits, remove the corrosion pits, and refurbish an axle on the Second Railcar in accordance with industry standards, thereby allowing the axle to fracture.

Union Pacific alleges that Progress Rail's negligence was the direct and proximate cause of the two derailments, causing Union Pacific damages in the sum of $947,251.36 for the DeWitt, Iowa, derailment and $4,191,563.65 for the Martin Bay, Nebraska, derailment.

Progress Rail has moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6), asserting that Union Pacific's claims are preempted by the Federal Railroad Safety Act ("FSRA"), at 49 U.S.C. § 20106.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his

2

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted).  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Specifically, the complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim. *Id*. at 556.

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).  The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

"Two working principles underlie . . . *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950 (citing *Twombly,* 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . .  be a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Although Union Pacific has submitted evidence in opposition to Progress Rail's Motion to Dismiss (Filing No. 61), the Court has not considered that evidence and will not treat the pending motion as one for summary judgment under Fed. R. Civ. P. 12(d).

## DISCUSSION

"[A] court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption. Thus, pre-emption will not lie unless it is 'the clear and manifest purpose of Congress.'" *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 664 (1993). "If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *Id.*

The FRSA does contain an express pre-emption clause, at 49 U.S.C.A. § 20106, which provides, in pertinent part:

> (a) National uniformity of regulation. – (1) Laws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable.
>
> (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety . . . until the Secretary of Transportation (with respect to railroad safety matters) . . . prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety . . . when the law, regulation, or order--
>
> > (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
> >
> > (B) is not incompatible with a law, regulation, or order of the United States Government; and

4

(C) does not unreasonably burden interstate commerce.

(b) Clarification regarding State law causes of action. – (1) Nothing in this section shall be construed to preempt an action under State law seeking damages for . . . property damage alleging that a party –

> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters) . . . covering the subject matter as provided in subsection (a) of this section;
>
> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by . . . the Secretar[y]; or
>
> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

(2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

(c) Jurisdiction.--Nothing in this section creates a Federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action.

State common law negligence actions may complement federal law and regulations. *CSX Transportation*, 507 U.S. at 668. "[R]egulations adopted pursuant to the FRSA will preempt a particular state law tort claim only if they 'substantially subsume' the subject matter of the relevant state law." *In re: Derailment Cases*, 416 F.3d 787, 793 (8th Cir. 2005) (quoting *CSX Transportation*, 507 U.S. at 664).

Progress Rail argues that Union Pacific's common law negligence claims have been substantially subsumed by federal regulations promulgated by the Federal Railroad Administration ("FRA") pursuant to the FRSA, specifically 49 C.F.R. §§ 215.105, 215.11, and 215.7:

> A railroad may not place or continue in service a car, if–
> (a) An axle on the car has a crack or is broken;

(b) An axle on the car has a gouge in the surface that is–
    (1) Between the wheel seats; and
    (2) More than one-eighth inch in depth;
(c) An axle on the car, used in conjunction with a plain bearing, has an end collar that is broken or cracked;
(d) A journal on the car shows evidence of overheating, as evidenced by a pronounced blue black discoloration; or
(e) The surface of the plain bearing journal on the axle, or the fillet on the axle, has--
    (1) A ridge;
    (2) A depression;
    (3) A circumferential score;
    (4) Corrugation;
    (5) A scratch;
    (6) A continuous streak;
    (7) Pitting;
    (8) Rust; or
    (9) Etching.

49 C.F.R. §§ 215.105.

Designated inspectors. (a) Each railroad that operates railroad freight cars to which this part applies shall designate persons qualified to inspect railroad freight cars for compliance with this part . . . .

(b) Each person designated under this section shall have demonstrated to the railroad a knowledge and ability to inspect railroad freight cars for compliance with the requirements of this part . . . .

(c) With respect to designations under this section, each railroad shall maintain written records of:

(1) Each designation in effect; and

(2) The basis for each designation.

49 C.F.R. § 215.11.

Any person (an entity of any type covered under 1 U.S.C. 1, including but not limited to the following: a railroad; a manager, supervisor, official, or other employee or agent of a railroad; any owner, manufacturer, lessor, or lessee of railroad equipment, track, or facilities; any independent contractor providing goods or services to a railroad; and any employee of such owner, manufacturer, lessor, lessee, or independent contractor) who violates any requirement of this part _or causes_ the violation of any such requirement is

> subject to a civil penalty of at least $650 and not more than $25,000 per violation, except that: Penalties may be assessed against individuals only for willful violations, and, where a grossly negligent violation or a pattern of repeated violations has created an imminent hazard of death or injury to persons, or has caused death or injury, a penalty not to exceed $100,000 per violation may be assessed. Each day a violation continues shall constitute a separate offense. See Appendix B to this part for a statement of agency civil penalty policy.

49 C.F.R. § 215.7 (emphasis added).

"It is clear that the FRA's regulations are intended to prevent negligent inspection by setting forth minimum qualifications for inspectors, specifying certain aspects of freight cars that must be inspected, providing agency monitoring of the inspectors, and establishing a civil enforcement regime. These intentions are buttressed by the FRA's inspection manual for federal and state inspectors." *In re: Derailment Cases,* 416 F.3d at 794.

The FRA's regulations do substantially subsume the subject matter of Union Pacific's claim that Progress Rail was negligent in its inspection of the axles, in that the regulations are very specific regarding the standard of care demanded of a railroad, its designated inspectors, and anyone else who may cause a violation of FRA safety standards. Although Union Pacific argues that its claims are based not only on negligent inspection, but also on Progress Rail's negligent refurbishing or reconditioning of the axles before the mounting of roller bearings, the essence of Union Pacific's claim is that Progress Rail allowed the railcars to return to service with axle defects among those listed in 49 C.F.R. §§ 215.105. Union Pacific also argues that the FRSA is intended to preempt actions against railroads only and not against "manufacturers." The Court notes, however,

that the language of 49 C.F.R. § 215.7 suggests that actions against manufacturers and independent contractors are also preempted by the FRSA.

Although, in 2005, the Eighth Circuit Court stated that "there is no indication that the FRA meant to leave open a state tort cause of action to deter negligent inspection," (*In re: Derailment Cases*, 416 F.3d 794), Congress amended the FRSA in 2007.  It is this Court's task to focus on the plain wording of the preemption statute, which includes the 2007 amendment at 49 U.S.C. § 20106(b).  Under that amendment, a plaintiff can bring a state law claim alleging that a party "has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters) . . . ."  A party can also bring a state law claim alleging that a party "has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by . . . the Secretar[y.]"[1]  Nothing in the plain language of the 2007 amendment limits its application to actions brought *against* railroads.  Nor does the language suggest that the "standard of care" established in any specific regulation or order must include a mandate directed at the named defendant.  In other words, although 49 C.F.R. § 215.105 prohibits *railroads* from placing cars in service with certain axle defects, a reading of this regulation together with §§ 215.11 and 215.7 indicates that the standard of care set out in § 215.105 is intended to apply to designated inspectors and to any person who *causes* a violation of § 215.105 .

---

[1] 49 U.S.C. § 20106(b)(C) also permits claims alleging that a party "has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2)," but this Court construes the term "a State law" to refer to a state statute and not common law causes of action.

Progress Rail notes that Union Pacific's Amended Complaint (Filing No 42) does not present its claims in the context of the language of 49 U.S.C. § 20106(b). Liberally construing the Amended Complaint, however, Union Pacific's allegations are sufficient to raise its right to relief above the speculative level, and to create a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of its claims.

Accordingly,

IT IS ORDERED:

1. Defendant Progress Rail Services Corporation's Motion to Dismiss (Filing No. 45) is denied; and

2. Defendant Progress Rail Services Corporation will respond to the Amended Complaint on or before December 24, 2010.

DATED this 9th day of December, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge