## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNION PACIFIC RAILROAD COMPANY,** | ) ) ) | **CASE NO. 8:10CV38** |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | **MEMORANDUM AND ORDER** |
| **PROGRESS RAIL SERVICES CORPORATION,** | ) ) ) ) | |
| Defendant. | ) | |

This matter is before the Court on the Defendant's Motion for Summary Judgment (Filing No. 152). The parties have submitted briefs (Filing Nos. 153, 167, 173, 183, 188, 190, 193) and Indexes of Evidence (Filing Nos. 154, 168, 169, 174, 189, 194) in support of their respective positions. In essence, the Defendant Progress Rail Services Corporation ("Progress Rail") asks the Court to revisit its earlier Memorandum and Order (Filing No. 72) that denied Progress Rail's Motion to Dismiss on the basis of federal preemption. For the reasons discussed below, the Motion for Summary Judgment will be denied.

### FACTUAL AND PROCEDURAL HISTORY[1]

Union Pacific Railroad Company ("Union Pacific") is a Delaware corporation with its principal place of business in Omaha, Nebraska. Progress Rail is an Alabama corporation

---

[1] Progress Rail contends that its statement of material facts in its Brief in Support of Motion for Summary Judgment (Filing No. 153) should be deemed admitted, because Union Pacific failed to respond to those factual allegations as required by NECivR 56.1(b)(1). Specifically, Progress Rail contends that the Court should accept its factual assertion that it is not a "railroad" because it is not a "form of nonhighway ground transportation that runs on rails or electromagnetic guideways." (Filing No. 153 at 4, ¶ 1). While Union Pacific did not respond to the factual allegations in strict compliance with NECivR 56.1(b)(1), Progress Rail's motion re-asserts a *legal* defense raised in its earlier Motion to Dismiss. Resolution of the pending motion does not rest on the truth or falsity of Progress Rail's statement of material facts.

with its principal place of business in Alabama. The amount in controversy exceeds $75,000, and Union Pacific has invoked the Court's diversity jurisdiction.

On July 14, 2007, Union Pacific train CBMRV-12 (the "First Train") derailed near DeWitt, Iowa. The First Train was composed of 135 loaded coal cars, including railcar CWEX 1538 (the "First Railcar"), owned by a third party. Union Pacific's investigators concluded that the First Train derailed due to the failure of an axle on the First Railcar. Union Pacific alleges that Progress Rail mounted a roller bearing on the axle in April 2006 without properly inspecting the axle for corrosion pits, removing the corrosion pits, checking the axle for cracks, and treating the axle in compliance with industry standards, thereby allowing the axle to fracture.

On January 14, 2010, Union Pacific train 3CEBJK-14 (the "Second Train") derailed near Martin Bay, Nebraska. The Second Train was composed of 123 loaded cars, including railcar JECX 1409 (the "Second Railcar"), owned by a third party. Union Pacific's investigators concluded that the Second Train derailed due to the failure of an axle on the Second Railcar. Union Pacific alleges that Progress Rail mounted a roller bearing on the axle approximately 11 months before the derailment, and failed to inspect the axle for corrosion pits, remove the corrosion pits, and refurbish an axle on the Second Railcar in accordance with industry standards, thereby allowing the axle to fracture.

Union Pacific contends that Progress Rail's negligence was the direct and proximate cause of the two derailments, causing Union Pacific damages in the sum of $947,251.36 for the DeWitt, Iowa, derailment and $4,191,563.65 for the Martin Bay, Nebraska, derailment.

Progress Rail moved to dismiss this action, asserting that Union Pacific's claims are preempted by the Federal Railroad Safety Act ("FRSA"), at 49 U.S.C. § 20106. The Court denied the motion to dismiss, finding that while regulations promulgated pursuant to the FRSA do substantially subsume the subject matter of this action, *i.e.*, the standard of care to be exercised by those who place railcar axles in service, the 2007 amendment to the FRSA permits state law claims alleging a failure "to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters) . . . ." and a party also can bring a state law claim alleging that a defendant "has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by . . . the Secretar[y]." *Id.* § 20106(b).

Progress Rail now moves for summary judgment on the theory that the FRSA applies to railroads and, because Progress Rail is not a railroad[2], judgment must be entered in favor of Progress Rail and the action dismissed.

**STANDARD OF REVIEW**

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gage v. HSM Elec. Prot. Servs., Inc.*, 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c); *Myers v. Lutsen Mountains Corp.*, 587 F.3d 891, 893 (8th Cir. 2009)). The court will view "all facts in the

---

[2] Union Pacific contends that Progress Rail *is* a railroad carrier, because it owns and operates a short-line "Class III" railroad. While there may be a genuine issue of fact as to whether Progress Rail is a railroad carrier as defined in 49 U.S.C. § 20102(3), this Court does not consider that question to be dispositive. The distinction between "railroad" and "railroad carrier" is discussed, below.

light most favorable to the non-moving party and mak[e] all reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir 2011). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586-87)), *cert. denied*, 132 S. Ct. 513 (2011). "'[T]he mere existence of *some* alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

4

In other words, in deciding "a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where "there is no 'genuine issue for trial'"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## DISCUSSION

Concepts of federal preemption were described by the Supreme Court succinctly in *Hillsborough Cnty., Fla. v. Automated Med. Labs.*, 471 U.S. 707 (1985):

> It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that "interfere with, or are contrary to," federal law. Under the Supremacy Clause, federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. In the absence of express pre-emptive language, Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. Pre-emption of a whole field also will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."
>
> Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]"
>
> We have held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes.

*Id.* at 712-13 (internal citations omitted).

5

As discussed in the Court's Memorandum and Order on the Defendant's Motion to Dismiss, the FRSA contains an express pre-emption clause, which provides, in pertinent part:

> (a) National uniformity of regulation. – (1) Laws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable.
>
> (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety . . . until the Secretary of Transportation (with respect to railroad safety matters) . . . prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety . . . when the law, regulation, or order--
>
>> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
>>
>> (B) is not incompatible with a law, regulation, or order of the United States Government; and
>>
>> (C) does not unreasonably burden interstate commerce.
>
> (b) Clarification regarding State law causes of action. – (1) Nothing in this section shall be construed to preempt an action under State law seeking damages for . . . property damage alleging that a party –
>
>> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters) . . . covering the subject matter as provided in subsection (a) of this section;
>>
>> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by . . . the Secretar[y]; or
>>
>> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).
>
> (2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

(c) Jurisdiction.--Nothing in this section creates a Federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action.

49 U.S.C. § 20106.

This Court concluded that the standard of care underlying Union Pacific's common law negligence claims was substantially subsumed by federal regulations promulgated by the Federal Railroad Administration ("FRA") pursuant to the FRSA, specifically 49 C.F.R. §§ 215.105, 215.11, and 215.7:

> A railroad may not place or continue in service a car, if–
> (a) An axle on the car has a crack or is broken;
> (b) An axle on the car has a gouge in the surface that is–
> > (1) Between the wheel seats; and
> > (2) More than one-eighth inch in depth;
> (c) An axle on the car, used in conjunction with a plain bearing, has an end collar that is broken or cracked;
> (d) A journal on the car shows evidence of overheating, as evidenced by a pronounced blue black discoloration; or
> (e) The surface of the plain bearing journal on the axle, or the fillet on the axle, has--
> > (1) A ridge;
> > (2) A depression;
> > (3) A circumferential score;
> > (4) Corrugation;
> > (5) A scratch;
> > (6) A continuous streak;
> > (7) Pitting;
> > (8) Rust; or
> > (9) Etching.

49 C.F.R. § 215.105.

> (a) Each railroad that operates railroad freight cars to which this part applies shall designate persons qualified to inspect railroad freight cars for compliance with this part . . . .
>
> (b) Each person designated under this section shall have demonstrated to the railroad a knowledge and ability to inspect railroad freight cars for compliance with the requirements of this part . . . .

7

> (c) With respect to designations under this section, each railroad shall maintain written records of:
>
> (1) Each designation in effect; and
>
> (2) The basis for each designation.

*Id.* § 215.11.

> Any person (an entity of any type covered under 1 U.S.C. 1, including but not limited to the following: a railroad; a manager, supervisor, official, or other employee or agent of a railroad; any owner, manufacturer, lessor, or lessee of railroad equipment, track, or facilities; any independent contractor providing goods or services to a railroad; and any employee of such owner, manufacturer, lessor, lessee, or independent contractor) who violates any requirement of this part *or causes* the violation of any such requirement is subject to a civil penalty of at least $650 and not more than $25,000 per violation, except that: Penalties may be assessed against individuals only for willful violations, and, where a grossly negligent violation or a pattern of repeated violations has created an imminent hazard of death or injury to persons, or has caused death or injury, a penalty not to exceed $100,000 per violation may be assessed. Each day a violation continues shall constitute a separate offense. See Appendix B to this part for a statement of agency civil penalty policy.

*Id.* § 215.7 (emphasis added).[3]

Progress Rail argues that (1) Union Pacific's action is pre-empted by the FRSA and the regulations promulgated to implement that Act, and (2) because Progress Rail is not a "railroad," Union Pacific has no legal recourse against Progress Rail for its alleged negligent inspection and refurbishing of railcar axles.

It is true that the FRSA and the regulations promulgated by the FRA apply to railroads; but a "railroad" is simply "any form of nonhighway ground transportation that runs on rails or electromagnetic guideways." 49 U.S.C. § 20102(2). A "railroad carrier" is "a

---

[3]After the Court issued its Memorandum and Order on the Defendant's Motion to Dismiss, the FRA, effective June 25, 2012, "increas[ed] the aggravated maximum civil penalty . . . from $100,000 to $105,000." 77 Fed. Reg. 24415-01, 24415 (Apr. 24, 2012).

person providing railroad transportation." *Id.* § 20102(3). Whether or not Progress Rail is considered a "railroad carrier" is not dispositive of the pending motion. Progress Rail acknowledges that it inspects and refurbishes railcar axles and assembles wheel sets for use by owners of railcars who place those railcars in railroad transportation. (Def.'s Br., Filing No. 153 at 4-5.) Although Progress Rail disclaims responsibility for any decisions to place the wheel sets and their axles in service on railroad tracks (*id*. at 5), it defies reason to suggest that Progress Rail expected any other result.

Nothing in the FRSA prevents a railroad carrier such as Union Pacific from bringing a state common law action against a defendant (whether that defendant is a railroad carrier or not) alleging negligent inspection and refurbishing of railcar axles. Progress Rail has cited no statute, regulation, or case law to the contrary.[4] To the extent that the law of any state might suggest a standard of care for the maintenance of railcar axles less rigorous than that described in 49 C.F.R. § 215.105, however, such state-law standard of care is pre-empted by the standard set forth in the federal regulation. A less rigorous standard of care for inspection and maintenance of railcar axles than that set out in the federal regulations would create "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,"[5] *i.e.*, railroad safety. This is especially true in a case like this, where it is alleged that defects in axles remaining after inspection and refurbishing were concealed by roller bearings at the time the wheel sets were placed in

---

[4] Progress Rail suggests that the decision in *Grade v. BNSF Ry. Co.*, 676 F.3d 680 (8th Cir. 2012), lends support for its theory that Union Pacific's action should be dismissed based on federal pre-emption. This Court finds the facts and legal analysis in *Grade* to be inapposite to this case.

[5] *Hillsborough*, 471 U.S. at 713.

service, precluding the railroad carrier from conducting its own inspection of critical parts of the axles. "[A] railroad's ability to equip its fleet . . . in compliance with federal standards is meaningless if manufacturers [do not] produce . . . parts that meet those standards." *Kurns v. R.R. Friction Prods. Corp.*, 132 S. Ct. 1261, 1269 (2012).

It is also clear that the federal pre-emption here is "partial" and not "complete." The FRSA does not create any federal cause of action against parties such as Progress Rail, and the FRSA specifically preserves state-law causes of action.

Genuine issues of material fact remain for trial including but not limited to: Whether Progress Rail violated the applicable standard of care when inspecting and refurbishing axles on the First Railcar and Second Railcar; whether any such negligence was the proximate cause of the derailments of the First Train and Second Train, and Union Pacific's damages.

Accordingly,

IT IS ORDERED:

Defendant Progress Rail Services Corporation's Motion for Summary Judgment (Filing No. 152) is denied.

DATED this 11th day of October, 2012.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge