# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **UNION PACIFIC RAILROAD COMPANY,** | **CASE NO. 8:10CV38** |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| **PROGRESS RAIL SERVICES CORPORATION,** | |
| Defendant. | |

This matter is before the Court on five motions: (1) the Motion in Limine submitted by Plaintiff Union Pacific Railroad Company ("Union Pacific") to exclude expert testimony of Edward Cox and Norman Hooper (the "Cox/Hooper Motion") (Filing No. 222); (2) the Motion in Limine submitted by Defendant Progress Rail Services, Inc. ("Progress Rail") to exclude expert testimony of Hans Iwand (the "Iwand Motion") (Filing No. 227); (3) Union Pacific's Motion in Limine to exclude discussion, testimony, argument or colloquy on a wide variety of subjects in eight general categories ("Union Pacific's Omnibus Motion") (Filing No. 243); (4) Progress Rail's Motion in Limine to exclude certain categories of evidence ("Progress Rail's Omnibus Motion") (Filing No. 245); and (5) Union Pacific's Request for Oral Argument and Evidentiary Hearing on the Iwand Motion (Filing No. 248).

## FACTUAL HISTORY

On July 14, 2007, Union Pacific train CBMRV-12 (the "First Train") derailed near DeWitt, Iowa. The First Train was composed of 135 loaded coal cars, including railcar CWEX 1538 (the "First Railcar"), owned by a third party. Union Pacific's investigators concluded that the First Train derailed due to the failure of an axle on the First Railcar. Union Pacific alleges that Progress Rail mounted a roller bearing on the axle in April 2006 without properly inspecting the axle for corrosion pits, removing the corrosion pits, checking

the axle for cracks, and treating the axle in compliance with industry standards, thereby allowing the axle to fracture.

On January 14, 2010, Union Pacific train 3CEBJK-14 (the "Second Train") derailed near Martin Bay, Nebraska.  The Second Train was composed of 123 loaded cars, including railcar JECX 1409 (the "Second Railcar"), owned by a third party.  Union Pacific's investigators concluded that the Second Train derailed due to the failure of an axle on the Second Railcar.  Union Pacific alleges that Progress Rail mounted a roller bearing on the axle approximately 11 months before the derailment, and failed to inspect the axle for corrosion pits, remove the corrosion pits, and refurbish an axle on the Second Railcar in accordance with industry standards, thereby allowing the axle to fracture.

Union Pacific contends that Progress Rail's negligence was the direct and proximate cause of the two derailments, causing Union Pacific damages in the sum of $947,251.36 for the DeWitt, Iowa, derailment and $4,191,563.65 for the Martin Bay, Nebraska, derailment.

## STANDARD OF REVIEW

Fed. R. Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

In light of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999),[1] the Court must screen proffered expert testimony for relevance and reliability. *Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 896 (8th Cir. 2008).

## DISCUSSION

**I. The Cox/Hooper Motion**

Union Pacific seeks to preclude Progress Rail from offering expert testimony from Edward Cox and Norman Hooper, asserting that such opinions lack foundation; are unreliable, irrelevant, based on speculation and conjecture, and unfairly prejudicial; and that they will mislead and confuse the jury.

Dr. Cox conducted certain experiments with "exemplar" axles and formed opinions regarding the cause of the Martin Bay and DeWitt axle failures. He contends that corrosion pits can form in railroad axles after only a few weeks of operation; fatigue cracks can occur without pits being present; pits can occur without cracks forming; and the Martin Bay and DeWitt axle failures probably occurred as a result of old age, extensive use, and corrosion fatigue. From the evidence and arguments presently before the Court it does not appear that Dr. Cox has sufficient foundation to offer an opinion about what *caused* the Martin Bay

---

[1] The Supreme Court held that *Daubert* applies to all expert testimony, not only scientific expert testimony. *Kumho Tire Co.*, 526 U.S. at 141.

and DeWitt axle failures. It appears that his research *is* relevant to rebut Union Pacific's allegations of negligence on the part of Progress Rail, in that Dr. Cox conducted certain experiments suggesting that even if the axles in question had been properly inspected, refurbished, and mounted by Progress Rail, the defects in the axles (detected *after* the accidents) might not have existed, or might not have been detectible, or might not have led a reasonable person to conclude they posed any danger, at the time of Progress Rail's alleged negligent inspection, refurbishing and mounting. Accordingly, Union Pacific's Motion in Limine will be granted with respect to Dr. Cox's opinions regarding the *cause* of the Martin Bay and DeWitt axle failures, but Dr. Cox's testimony may be admissible to rebut Union Pacific's evidence of Progress Rail's alleged negligence.

Hooper intends to offer certain testimony about Union Pacific's damages, suggesting that they should be offset for salvage values and "betterment." Union Pacific argues that Hooper's opinions lack adequate foundation and are speculative. Union Pacific also asks that Hooper be precluded from offering any opinions about the cause of the derailments. The Court finds no reason to conclude that Progress Rail intends to offer Hooper's expert testimony on the question of causation, but, to the extent that Union Pacific seeks to preclude Hooper, in limine from "presenting any testimony or evidence related to the cause of axle failures in this case" (Pl.'s Br., Filing No. 223 at 12), the motion will be granted. With respect to Hooper's testimony on damages, the motion in limine will be denied and Union Pacific can raise its objections at trial.

## II. The Iwand Motion, and Union Pacific's Request for Hearing

Union Pacific's expert Hans Iwand inspected the broken axles visually, and conducted tests on the axles, leading him to conclude that certain corrosion pits and

fatigue cracks on the axle surfaces were present at the time Progress Rail reconditioned the axles, months before the accidents occurred. Iwand concludes that Progress Rail was negligent in its efforts to recondition the axles and, because corrosion pits and fatigue cracks can cause axles to break and there is no other explanation for the axles breaking, Progress Rail's negligence was the cause of the accidents.

The Court has reviewed and considered Iwand's qualifications and methodology, using the standards of review set out above. Iwand's opinion that certain corrosion pits and fatigue cracks in the axles were present at the time Progress Rail refurbished them, and that Progress Rail failed to remove such corrosion pits and fatigue cracks, satisfies the standards of Fed. R. Evid. 702 and *Daubert.* He is also qualified to testify that corrosion pitting and fatigue cracks in the fillet area of an axle can cause fractures in the journal, causing the axle to fail. His ultimate opinion that corrosion pits and/or fatigue cracks present in the axles before their refurbishing by Progress Rail actually caused the axle failures, or more likely than not caused the axle failures, does not appear to be supported by methodology that satisfies the standards of Fed. R. Evid. 702 and *Daubert*, and Iwand will be precluded, in limine, from offering that conclusion as to causation.

Union Pacific's Request for Oral Argument and an Evidentiary Hearing (Filing No. 248) is untimely and will be denied.

### III. Union Pacific's Omnibus Motion

Union Pacific seeks to preclude any evidence or argument about (1) the effect of overloading or uneven loading of unit coals cars on the fatigue failure of axles; (2) the control exercised by Union Pacific or other Class I Railroads over the American Association of Railroads ("AAR") and/or the Wheels, Axles, Bearing, and Lubrication ("WABL")

Committee; (3) any alleged connection between the forge dates of the axles at issue in this case and the derailments; (4) any alleged disparate performance between Class F and Class K axles in 286,000 pound coal service; (5) "betterment" or depreciation of Union Pacific property damaged as a result of the accidents; (6) undisclosed expert opinions; (7) undisclosed documents or testimony; and (8) the financial disparity of the parties, Union Pacific's size and ability to pay a judgment, and any suggestion that Union Pacific should be sent a "message."

Progress Rail argues that (1) overloading or uneven loading of rail cars can have an impact on the performance of axles and may be relevant to the issue of causation; (2) Union Pacific participated in the AAR and the WABL Committee which set standards for the refurbishing of rail axles, thereby participating in the development of standards which it now contends are deficient; (3) the forge dates of the axles is admissible, because metal fatigue due to age is relevant to causation; (4) disparate performance of Class F and Class K axles in coal service is relevant, because Union Pacific knew that Class K axles performed better under such service and Progress Rail was not responsible for the design of the Class F axles; and (5) Progress Rail should be permitted to offer evidence demonstrating that repairs made to Union Pacific's track after the derailment put Union Pacific in a better position than it was prior to the derailments, and accounting for depreciation of property that Union Pacific claims was destroyed. Progress Rail does not object to Union Pacific's motion as it seeks to bar undisclosed expert opinions, witness testimony, or documentary evidence. Nor does Progress Rail object to Union Pacific's motion as it seeks to prohibit reference to the parties' relative size and ability to pay for alleged damages.

The Court agrees with Progress Rail's position that Union Pacific's objections to certain evidence and argument as described in parts (1) through (5) of its omnibus motion can best be addressed at trial, rather than in an order in limine. Accordingly, parts (1) through (5) of Union Pacific's Omnibus Motion in limine will be denied, without prejudice to Union Pacific raising its objections at the time of trial. Parts (6) through (8) of the motion will be granted.

## IV. Progress Rail's Omnibus Motion

Progress Rail seeks to preclude Union Pacific, in limine, from offering any evidence or argument related to (A) corrosion pitting located on the journal stub and not on the fillet of an axle; (B) reports issued by the Federal Railway Administration ("FRA") and Transportation Safety Board ("TSB") of Canada; (C) Progress Rail's implementation of a secondary inspection station and use of magnifying glasses during its inspection of railcar axles; (D) the Trinity Rail report on the Martin Bay Derailment; (E) testimony of Dana Medlin; (F) Union Pacific's video of the Progress Rail wheel shop in Sidney, Nebraska; (G) Union Pacific's alleged damages that has not been produced in the case; (H) the past business relationship between Progress Rail and Westar Energy; (I) studies allegedly performed by Richard Hodges and Howard Bush; (J) the video of the DeWitt derailment[2]; (K) Caterpillar Inc.'s acquisition and ownership of Progress Rail, and Caterpillar's technical facilities; (L) additional procedures Progress Rail theoretically could have implemented in its axle inspection and reconditioning processes; (M) Progress Rail's failure to remove older 6-1/2 x 12 axles from its interchange service and presentations to the WABL

---

[2] Progress Rail also seeks an adverse jury instruction for Union Pacific's failure to disclose the video of the Dewitt derailment.

7

Committee regarding the same; (N) statements concerning defense counsel's trial strategy, reference to jury verdicts in other parts of the United States, reference to counsel's law practice or clients, reference to the probably testimony of absent witnesses, expert testimony outside the scope of written opinions produced, and exhibits or evidence not produced or identified in discovery.

Union Pacific states it has no intention of offering any FRA reports, and part (B) of Progress Rail's motion as it relates to FRA reports should be denied as moot. Union Pacific states it has no intention of offering the video tape of the DeWitt derailment, and part (J) of Progress Rail's motion also should be denied as moot. Union Pacific states it has no intention of offering evidence of Progress Rail's recent acquisition by Caterpillar, though Union Pacific may wish to voir dire the jury regarding Caterpillar to avoid potential bias.[3] Union Pacific states it has no present intention of introducing evidence or argument about Progress Rail's trial strategy, other jury verdicts, defense counsel's law practice, or expert testimony outside the scope of disclosed reports. With respect to Progress Rail's other requests for orders in limine, Union Pacific resists the motion, suggesting that Progress Rail's objections are unfounded or premature.

In general, the Court agrees with Union Pacific that Progress Rail's objections can best be addressed at trial, rather than in an order in limine. It appears that many of Progress Rail's objections are, or may be, moot. With respect to part (C) of Progress Rail's motion, however, the Court is persuaded that evidence of Progress Rail's establishment of a secondary inspection station and implementation of changes in its inspection and

---

[3] The Court will plan to address the matter of such potential bias within its own voir dire.

refurbishing procedures likely are *not* admissible as evidence of negligence, pursuant to Fed. R. Evid. 407.  While Union Pacific may succeed in demonstrating the admissibility of such evidence under certain exceptions to Rule 407, an order in limine is proper to preclude Union Pacific from eliciting such evidence until such grounds for an exception to Rule 407 are established.

Accordingly,

IT IS ORDERED:

1.  The Motion in Limine submitted by Plaintiff Union Pacific Railroad Company ("Union Pacific") to exclude expert testimony of Edward Cox and Norman Hooper (Filing No. 222) is granted in part, as follows:

> Edward Cox and Norman Hooper are precluded, in limine, from offering their opinions as to the cause of the two axle failures; and
>
> The Motion is otherwise denied;

2.  The Motion in Limine submitted by Defendant Progress Rail Services, Inc. ("Progress Rail") to exclude expert testimony of Hans Iwand (Filing No. 227) is granted in part, as follows:

> Hans Iwand is precluded, in limine, from offering his opinion that corrosion pits and/or fatigue cracks present in the axles before their refurbishing by Progress Rail caused the axle failures; and
>
> The Motion is otherwise denied;

3.  Union Pacific's Motion in Limine to exclude discussion, testimony, argument or colloquy on subjects in eight general categories (Filing No. 243) is granted in part as follows:

> Progress Rail is precluded, in limine, from offering any evidence or argument related to undisclosed expert opinions, documents or testimony; the financial disparity of the parties; Union Pacific's size and ability to pay a judgment; or any suggestion that Union Pacific should be sent a "message;" and
>
> The Motion is otherwise denied;

4. Progress Rail's Motion in Limine to exclude certain categories of evidence (Filing No. 245) is granted in part as follows:

>Union Pacific is precluded, in limine, from offering any evidence or argument related to reports issued by the Federal Railway Administration; Progress Rail's establishment of a secondary inspection station or implementation of changes in its axle inspection and refurbishing procedures after the accidents that are the subjection of this action; the video tape of the DeWitt derailment; Progress Rail's recent acquisition by Caterpillar Inc.; Progress Rail's trial strategy; other jury verdicts; defense counsel's law practice or client base; or expert testimony outside the scope of disclosed reports; and
>
>The Motion is otherwise denied; and

5.  Union Pacific's Request for Oral Argument and Evidentiary Hearing on the Iwand Motion (Filing No. 248) is denied.

DATED this 3rd day of May, 2013.

>BY THE COURT:
>
>s/Laurie Smith Camp
>Chief United States District Judge